UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X   <u>For Online Publication Only</u>
MIHAIL MORGIKIAN,

                                                                                                         **ORDER**
                                        Plaintiff,       20-CV-05724 (JMA)(ARL)

       -against-

FIDELITY INVESTMENTS,
                                         Defendant.
----------------------------------------------------------------------X

**AZRACK, United States District Judge:**

Plaintiff Mihail Morgikian ("Plaintiff" or "Morgikian"), proceeding <u>pro se</u>, brings this action against Defendant Fidelity Brokerage Services, LLC ("Defendant" or "Fidelity") alleging that it improperly applied the "wash sale rule," under 26 U.S.C. § 1091, to Plaintiff's stock purchases resulting in financial loss as well as physical and emotional distress. (Complaint ("Compl.") ECF No. 8.) Currently before the Court is Defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, to compel arbitration. For the following reasons, Defendant's motion to compel arbitration is GRANTED.

## I.  BACKGROUND

For purposes of the instant motion, the Court sets forth only the factual background necessary to determine whether arbitration should be compelled.

On March 26, 2001, Morgikian opened an account with Fidelity. (Affidavit of Joseph Bacon ("Bacon Aff.) ¶ 3, ECF No. 18-3.) To open the account, Morgikian executed an Account Application. (Bacon Aff. ¶¶ 3-4.) The Account Application contained a provision that stated:

> This account is governed by a pre-dispute arbitration clause which is found in Section 18 of the Customer Agreement. I acknowledge receipt of the pre-dispute arbitration clause.

("Account Application," Ex. 1 to Bacon Aff.)

1

Section 18 of the Customer Agreement, in its entirety, provided:

> I agree that all controversies that may arise between us (including but not limited to controversies concerning any order or transaction, or the continuation, performance or breach of this or any other agreement between us whether entered into before, on, or after the date this account is opened), shall be determined by arbitration before a panel of independent arbitrators set up by either the New York Stock Exchange, Inc. or National Association of Securities Dealers, Inc., as I may designate. If I do not notify you in writing of my designation within five (5) days after I receive from you a written demand for arbitration, then I authorize you to make such designation on my behalf.

("Customer Agreement," Ex. 2 to Bacon Aff.)

Between July 2019 and March 2020, Plaintiff purchased and sold Boeing stocks in a series of transactions through his Fidelity account. (ECF No. 1-1 at 8-11.) On June 8, 2020, Plaintiff sold a portion of his Boeing stock at a loss. (Compl. at 17; Def.'s Mot. at 15, ECF No. 18-1.) On June 11, 2020, Morgikian then purchased additional identical shares of Boeing. On the same date, Fidelity determined that because the June 8, 2020 sale of Boeing stock was for a loss, and the June 11, 2020 purchase was for additional identical stock, the wash sale rule was triggered pursuant to 26 CFR § 1.1091-1 (losses from wash sales of stock or securities). See 26 U.S.C. § 1091; (Def.'s Mot. at 15.) Morgikian disputes the application of the wash sale rule, and the resultant charges, to those transactions on his Fidelity account. (Pl's Opp., ECF No. 16.)

On October 14, 2020, Morgikian commenced a pro se action against Fidelity in the County of Nassau Supreme Court, alleging it had erroneously applied the wash sale rule. (ECF No. 1-1.) On November 24, 2020, Fidelity removed the action to this Court on the basis of diversity jurisdiction. (Notice of Removal, ECF No. 1.) By letter dated December 17, 2020, Morgikian advised the Court that he had became aware of the removal. On December 22, 2020, the Court ordered Morgikian to file his Complaint. (Electronic Scheduling Order dated 12/22/2020.) On January 4, 2021, Morgikian filed his Complaint which reiterated his claims that Fidelity erroneously applied the wash sale rule. (See, generally, Compl.) Morgikian asked for $10 million

2

dollars in compensatory damages. (Id.) On January 27, 2021, Fidelity sought leave to file a motion to dismiss pursuant to Rule 12(b)(6) and the pre-dispute arbitration agreement contained in Morgikian's executed customer agreement which this Court granted. (ECF No. 12.) Fidelity now moves to dismiss or stay this action and to compel arbitration pursuant to the terms of the Customer Agreement, the FAA, and Rule 12(b)(6).[1] (ECF No. 18.)

## II. DISCUSSION

### A. Pro Se Pleadings

"A pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). A court must liberally construe pro se pleadings and interpret them to raise the strongest arguments that they suggest. Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (citation and quotation marks omitted); see, also, Rene v. Citibank N.A., 32 F. Supp. 2d 539, 541 (E.D.N.Y. 1999) (holding that a court must "make reasonable allowances so that ... pro se plaintiffs do not forfeit their rights by virtue of their lack of legal training.") However, the court "need not argue a pro se litigant's case nor create a case for the pro se which does not exist." Ogunmokun v. Am. Educ. Servs./PHEAA, No. 12-CV-4403, 2014 WL 4724707, at *3 (E.D.N.Y. Sept. 23, 2014).

### B. Motion to Compel Arbitration

"In reviewing motions to compel arbitration brought under the FAA, the court applies a standard similar to that applicable for a motion for summary judgment. Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003); see also Brown v. St. Paul Travelers Companies, Inc., 331 F.

---

[1] The Court declines to address the motion to dismiss having granted Defendant's motion to compel arbitration. It is well-established that a district court should rule on a motion to compel arbitration before proceeding to a merits-based motion to dismiss. Harris v. TD Ameritrade Inc., 338 F. Supp. 3d 170, 181 (S.D.N.Y. 2018) (quotations omitted); see also Ukshini v. Comity Realty Corp., No. 15-CV-6214, 2016 WL 1733468, at *2 (S.D.N.Y. Apr. 29, 2016)(declining to address motion to dismiss having granted motion to compel).

App'x 68, 69-70 (2d Cir. 2009) ("The Court must evaluate a motion to compel arbitration, pursuant to the FAA, under a standard similar to the standard for a summary judgment motion.").

In deciding whether to compel arbitration, courts generally conduct a two-part test: "(1) [h]ave the parties entered into a contractually valid arbitration agreement? and (2) [i]f so, does the parties' dispute fall within the scope of that agreement?" Ostreicher v. TransUnion, LLC, 2020 WL 3414633 (S.D.N.Y. 2020) (citing In re Am. Express Fin. Advisors Secs. Litig., F.3d 113, 128 (2d Cir. 2011)). If these two conditions are met, the FAA "mandates that district courts shall direct the parties to proceed to arbitration...." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

"When performing this analysis, the court is not limited to the pleadings, and need not assume the truth of the facts alleged in the complaint." Harris v. TD Ameritrade Inc., 338 F. Supp. 3d 170, 182 (S.D.N.Y. 2018) (relying on Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995). "Once the moving party has established the existence of an arbitration agreement, the burden shifts to the party seeking to avoid arbitration to show the agreement to be inapplicable or invalid." Id. (citing Harrington v. Atl. Sounding Co., Inc., 602 F.3d 113, 124 (2d Cir. 2010)(internal citations omitted). At this stage of the analysis, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

In this instant case, while the pro se Plaintiff does not dispute that a valid enforceable arbitration agreement exists, the Court must still satisfy itself regarding the validity and applicability of such an agreement. See Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299 (2010) (noting that a court "should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid

4

provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is at issue")(internal citations omitted).

    a. **Validity of the Arbitration Agreement**

Regarding the first prong, the Court agrees with Fidelity that there is a valid agreement to arbitrate between the parties. Morgikian concedes this point as he does not dispute, or otherwise challenge the validity of the arbitration provisions.

To determine the validity of an agreement to arbitrate, courts apply principles of contract law. See Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004). Signatories to a contract are presumed to understand its terms and assent to them unless the party resisting enforcement can demonstrate that the agreement is inapplicable or invalid. See Herskovic v. Verizon Wireless, 2020 WL 1089601 (E.D.N.Y 2020)(requiring a customer resisting arbitration pursuant to a customer agreement to demonstrate that the agreement is deficient); cf. Accardo v. Equifax, Inc., 2019 WL 5695947 (E.D.N.Y. 2019)(denying a motion to compel arbitration where there existed a genuine dispute of material fact as to the existence of a valid arbitration agreement).

Fidelity has satisfied its burden that there is a valid agreement to arbitrate. It is undisputed that Plaintiff executed the Account Application which constituted his assent to the terms of the Customer Agreement. The Account Application provided, in the section above Morgikian's signature, set off in boldface and/or capitalized typeface, that the application and the account are "governed by a pre-dispute arbitration clause" located in the corresponding Customer Agreement. (See Account Application). By signing the Account Application, he expressly acknowledged receiving the pre-dispute arbitration clauses. Plaintiff has not denied signing or otherwise disputed the validity of the Account Application or Customer Agreement. The Court also finds no evidence in the record calling into the question the validity of these agreements. Accordingly, the Court

finds that there is a valid agreement to arbitrate between the parties.  See Boss Worldwide LLC v. Crabill, 2020 WL 1243805 (S.D.N.Y. Mar. 16, 2020)(finding a valid arbitration agreement where neither party has contested its validity).

      **b.  Scope of the Arbitration Agreement**

Having determined that a binding agreement to arbitrate exists, the Court also finds that the arbitration agreement governs Morgikian's claim.

To determine whether a valid arbitration agreement applies, courts must consider whether an arbitration clause is "broad or narrow."  Boss Worldwide LLC, at *3 (citing Daly v. Citigroup Inc., 939 F.3d 415 (2d Cir. 2019)).  Broad clauses, such as those that apply to substantially all disputes arising under the relevant contract, afford a strong presumption of arbitrability for claims arising in connection with their respective contractual arrangements.  Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001) (citing Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 23 (2d Cir. 1995).  Narrow clauses limit arbitration to specific types of disputes.  Id.

Here, the arbitration clause is clearly broad as it governs "all controversies that may arise" between Morgikian and Fidelity.  see, e.g., Paramedics JLM Industries, Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 172 (2d Cir. 2004) (holding an arbitration clause applying to "any and all differences and disputes . . . arising out of this charter" to be sufficiently broad to enjoy a presumption of arbitrability).  Because Morgikian's claims, which are based on certain actions Fidelity took in connection with his account (i.e., applying the wash sale rule to certain transactions) arise in connection with the Account, the claims fall within the scope of the arbitration agreement contained in the Account Application and Customer Agreement, and are subject to arbitration.  Plaintiff does not dispute otherwise.  Accordingly, Fidelity's motion to compel arbitration is

GRANTED.

## C. Stay of the instant proceedings

Having determined that Plaintiff's claims are wholly governed by the arbitration clause, the Court must stay the instant action pending arbitration. See Katz v. Cellco P'ship, 794 F.3d 341 (2d Cir. 2015) (finding that the Federal Arbitration Act requires courts to stay actions where claims are wholly arbitrable and either party has requested a stay).

### III. CONCLUSION

Defendant's motion to compel arbitration is GRANTED and the instant action STAYED pending arbitration between the parties.

**SO ORDERED.**

Dated: March 18, 2022
Central Islip, New York

                                                       /s/     JMA
                                        JOAN M. AZRACK
                                        UNITED STATES DISTRICT JUDGE